AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, Respondent-Respondent.†

AMERICAN STANDARD INSURANCE COMPANY, Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, Respondent-Respondent.†

Court of Appeals

*Nos. 97–1105, 97–1106. Submitted on briefs September 9, 1997.—Decided October 30, 1997.*

(Also reported in 571 N.W.2d 710.)

†Petition to review granted.

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Timothy C. Frautschi* of *Foley & Lardner* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, with *Alan Lee,* assistant attorney general.

Before Eich, C.J., Dykman, P.J., and Roggensack, J.

EICH, C.J.    American Family Mutual Insurance Company appeals from an order affirming a decision of the Tax Appeals Commission assessing taxes on income generated from U.S. government obligations for

the period 1984–91.[1] The sole issue on appeal is whether the statute imposing the tax, § 71.43(2), STATS., is a nondiscriminatory franchise tax within the meaning of 31 U.S.C. § 3124(a)(1), which exempts U.S. government obligations from all state and local taxation *except* such as may be imposed by "a nondiscriminatory franchise tax."

The facts are not in dispute. American Family is subject to § 71.43(2), STATS., which imposes a franchise tax on the net income of Wisconsin-based insurance companies. The term "net income" is defined as "federal taxable income as determined in accordance with the provisions of the internal revenue code." Section 71.45(2)(a), STATS. The effect of incorporating the federal statutes is to bring income from federal obligations within net income and make it taxable.

American Family did not report income derived from federal obligations on its returns for the years in question. After conducting a field audit, the Department of Revenue assessed additional taxes on the company based, at least in part, on its income from federal government obligations. After the department denied its request for a redetermination, American Family appealed to the Tax Appeals Commission, arguing, among other things, that because Wisconsin law does not tax income on state and municipal obligations, its taxation of income from federal obligations renders the tax discriminatory and thus impermissible under 31 U.S.C. § 3124(a)(1). In support of its argu-

---

[1] The commission actually issued two decisions, one on American Family's appeal from its assessment, and one on the appeal of one of its subsidiaries, American Standard Insurance Company. The parties stipulated to have both matters tried in the same forum. We refer to both entities as American Family in this decision.

ment, American Family referred the commission to several statutes expressly exempting various state and municipal obligations from "all taxation."

The commission upheld the assessment. The commission ruled that the existence of the other exemption statutes was not enough to render the tax discriminatory. According to the commission, American Family must show not only that § 71.43(2), STATS., when considered in light of related exemptions from the tax, is discriminatory on its face but also that the department actually applied it in a discriminatory manner to defeat the tax. On the department's assertions that it does not, in practice, exempt state and local obligations from the tax, the commission concluded that, as applied, the tax was not discriminatory and dismissed American Family's appeal. American Family sought judicial review of the commission's decision, and the circuit court affirmed.

## I.  Standard of Review

Here, as in other administrative appeals, we review the agency's decision—in this case the commission's—not the circuit court's.[2] *Sterlingworth Condominium Ass'n v. DNR*, 205 Wis. 2d 702, 720, 556 N.W.2d 791, 794 (Ct. App. 1996). Because the commission's decision is based largely on its interpretation and application of statutes to conceded facts, the scope of

---

[2] While the department possesses expertise in administering Wisconsin's tax laws, we have repeatedly held that, in such cases, we review the commission's decision, not the department's. *See, e.g., Zignego Co. v. DOR*, 211 Wis. 2d 817, 822, 565 N.W.2d 590, 592 (Ct. App. 1997); *Video Wisconsin, Ltd. v. DOR*, 175 Wis. 2d 195, 199, 498 N.W.2d 880, 882 (Ct. App. 1993); *DOR v. Lake Wisconsin Country Club*, 123 Wis. 2d 239, 242, 365 N.W.2d 916, 918 (Ct. App. 1985).

our review of that decision—more particularly, the degree to which we will defer to the commission's legal conclusions—is hotly contested by the parties. American Family, as expected, urges us to consider the issues *de novo*, while the commission argues that its decision is entitled to deference.

Whether courts should defer to an administrative agency's interpretation and application of statutes, and if so, to what degree, has been the subject of much discussion in the cases in recent years. While it has long been recognized that, as a general proposition, the interpretation and application of statutes present a question of law for courts to decide, we will defer to an agency's interpretation in some cases—in particular, where the agency is charged with administering the particular statute, where its interpretation is of "long-standing," and where it has employed its "expertise or specialized knowledge" in arriving at its decision. *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995).[3] Generally, where deference is appropriate, we will sustain the agency's interpretation if it is reasonable. *Id.* at 661, 663, 539 N.W.2d at 102, 103.[4]

---

[3] Other factors supporting judicial deference to agency interpretations include whether the agency's interpretation will "provide uniformity and consistency in the application of the statute," *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995), and whether the interpretation is "intertwined" with value and policy determinations within the agency's area of responsibility. *Barron Elec. Coop. v. Public Serv. Comm'n,* 212 Wis. 2d 752, 761, 569 N.W.2d 726, 731 (Ct. App. 1997).

[4] Where the foregoing considerations are present in a case, we will pay "great deference" to the agency, affirming its decision if it is reasonable, even if another interpretation would be

The issue before us in this case, however, involves the interpretation of an act of Congress. The commission concluded that even though the language of § 71.43(2), STATS. (considered in light of exemptions elsewhere in Wisconsin's taxing statutes), taxed interest on federal obligations but not on state or municipal obligations, the tax was nonetheless nondiscriminatory within the meaning of 31 U.S.C. § 3124(a)(1) because of the manner in which the department purported to apply the statute. In other words, the commission interpreted the phrase "nondiscriminatory . . . tax" in the federal law to validate a facially discriminatory tax, as long as the tax was being applied by a state agency in a nondiscriminatory manner.

In *William Wrigley, Jr., Co. v. DOR*, 153 Wis. 2d 559, 565, 451 N.W.2d 444, 447 (Ct. App. 1989), *rev'd on other grounds*, 160 Wis. 2d 53, 465 N.W.2d 800 (1991), *rev'd on other grounds*, 505 U.S. 214 (1992), we held that when the commission is interpreting and applying

---

equally or more reasonable. *Harnischfeger*, 196 Wis. 2d at 661, 663, 539 N.W.2d at 103. In cases where the agency has some experience in the area but has not developed the expertise which necessarily places it in a better position than a court to interpret a statute, we will still defer by sustaining the agency's interpretation if it is reasonable; but if another interpretation is *more* reasonable, we will reverse. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 286, 287, 548 N.W.2d 57, 62–63 (1996). In the former situation, we are said to apply "great deference" to the agency's decision, and in the latter, "due-weight" deference. *Barron Elec. Coop.*, 212 Wis. 2d at 760–62, 569 N.W.2d at 731–32. When the issue before the agency is one of first impression, however, or when the agency's position on the issue has been inconsistent, we pay no deference at all, considering the issues *de novo*. *UFE*, 201 Wis. 2d at 285, 548 N.W.2d at 62.

a federal statute, its decision is entitled to no deference at all.[5] In *Wrigley* we said:

> Under more usual circumstances, we would accord some deference to the commission's decision in this case, based as it is on the interpretation of a law in a field in which it has expertise. Here, however, the statute subject to interpretation is an act of Congress, not a law created by the Wisconsin Legislature. Like all administrative agencies, the commission was created, structured and empowered by the legislature for the primary purpose of "determin[ing] . . . all questions of law and fact arising under [specified provisions of the Wisconsin Statutes]." Sec. 73.01(4)(a), Stats. But whatever deference may be appropriate to the interpretation of particular sections of the Wisconsin Statutes by an agency created by the Wisconsin Legislature to do just that, we fail to see how or why similar deference should be accorded to the agency's interpretation of federal law.

*Wrigley*, 153 Wis. 2d at 565, 451 N.W.2d at 447.

The dispute in *Wrigley* closely tracks the dispute in this case. The commission, applying 15 U.S.C. § 381, which bars state taxation of income from interstate

---

[5] *Wrigley* involved the interpretation of a federal statute regulating state taxing authority on interstate commerce. The Wisconsin Supreme Court reversed our decision, not on the standard of review we applied to the commission's decision but on the ultimate interpretation of the federal statute at issue. *William Wrigley Jr., Co. v. DOR*, 160 Wis. 2d 53, 71, 84, 465 N.W.2d 800, 806, 812 (1991). Likewise, the United States Supreme Court reversed the Wisconsin Supreme Court on its interpretation of the federal statute. *Wrigley*, 505 U.S. 214, 235 (1992).

commerce unless the scope of the company's state business extends beyond solicitation of sales, ruled that Wrigley's activities in Wisconsin fit within the federal statutory exception and, as a result, its income was subject to state taxation. *Id.* at 563, 577, 451 N.W.2d at 446, 452. There, as here, the commission's decision turned on the interpretation and application of a federal statute, and we held that it was entitled to no deference. We see nothing in this case that would cause us to rule any differently here. Accordingly, we will review the commission's decision *de novo.*[6]

## II. Discussion

The bar against state taxation of federal obligations set forth in 31 U.S.C. § 3124(a) was described by the United States Supreme Court in *Memphis Bank & Trust Co. v. Garner,* 459 U.S. 392, 397 (1983), as a "restatement of the constitutional rule . . . of tax immunity established in *McCulloch v. Maryland.*" (Citation

---

[6] We have, on at least one occasion, recognized that the commission's role in coordinating federal and state tax-related programs provides some expertise in the particular area, justifying at least some judicial deference to its decision. In *DOR v. Heritage Mutual Insurance Co.,* 208 Wis. 2d 582, 589, 561 N.W.2d 344, 347 (Ct. App. 1997), we deferred to the commission's first-impression interpretation of the impact of federal tax-code amendments on state taxing statutes. Specifically, the commission determined the scope of an "add back" provision to state income tax which involved the interpretation of changes in federal tax law. In this case, however, we are dealing not with the commission's coordination of federal and state statutes but with its interpretation and application of a federal statute limiting the power of state taxation of federal obligations—the type of interpretation we held in *Wrigley* was not entitled to any deference whatsoever.

omitted.) It has its source in the Supremacy Clause. *Rockford Life Ins. Co. v. Illinois Dep't of Rev.*, 482 U.S. 182, 190 (1987).

While exempting "nondiscriminatory" franchise taxes from the bar against income taxation of federal obligations, 31 U.S.C. § 3124 does not define that term. In *Memphis Bank*, however, the Supreme Court described a discriminatory tax in this context as one that "imposes a greater burden on holders of federal property than on holders of similar state property." *Memphis Bank*, 459 U.S. at 397. Such a tax, said the Court, "impermissibly discriminates against federal obligations." *Id.*

*Memphis Bank* involved a tax similar to the one before us. A Tennessee statute taxed banking institutions on income from federal obligations, as well as on bonds and other obligations of states other than Tennessee, but it excluded interest on obligations of the State of Tennessee and its political subdivisions. Memphis Bank challenged the tax as violating the predecessor statute to 31 U.S.C. § 3124,[7] and the Court agreed, concluding that the Tennessee taxing statute was discriminatory. The Court said:

> It is clear that under the principles established in our previous cases, the Tennessee bank tax cannot be characterized as nondiscriminatory under § [3124]. Tennessee discriminates in favor of securities issued by Tennessee and its political subdivisions and against federal obligations. The State does so by including in the tax base income

---

[7] In *Savings League of Wisconsin, Ltd. v. DOR*, 141 Wis. 2d 918, 930, 416 N.W.2d 650, 655 (Ct. App. 1987), we recognized that the predecessor statute, 31 U.S.C. § 742 (1976), was substantially identical to the present version.

from federal obligations while excluding income from otherwise comparable state and local obligations. We conclude, therefore, that the Tennessee bank tax impermissibly discriminates against the Federal Government and those with whom it deals.

*Id.* at 398–99.

Without question the plain language of § 71.45(2)(a), STATS., defining "net income" in federal terms, reaches interest on federal obligations; and American Family points us to several other Wisconsin statutes exempting interest on state and municipal obligations from taxation.[8]

The department argues that, despite these exemptions, the corporate franchise tax imposed by § 71.43(2), STATS., should not be held discriminatory because the department has, as a matter of practice, informed corporations that the interest exempted by the statutes to which we have just referred must nonetheless "be included in the corporation's income for franchise tax purposes." It points to a 1986 instruction booklet for Wisconsin franchise and income taxes, which directs taxpayers to report "[i]nterest from state and municipal obligations which is not taxable for federal income tax purposes," and also to the 1987 instruction which tells taxpayers to "[e]nter interest income received on state and municipal obligations and

---

[8] *See, i.e.,* § 71.45(1m), STATS., 1993–94 (excludes income on bonds or notes issued by the Wisconsin Housing and Economic Development Authority from the corporate franchise tax); § 66.431(5)(a)4.c, STATS. (states that bonds issued by city redevelopment authorities are "exempt from all taxes"); § 66.4325 (5m), STATS. (exempts interest or income from bonds issued by community development authorities); and § 66.40(14), STATS. (exempts interest or income from bonds issued by a housing authority).

any other interest income which is exempt from federal income tax." Finally, the department submitted an affidavit to the commission indicating that it was the agency's "practice . . . to include income from state and local obligations" in measuring the net income of insurance companies for purposes of the corporate franchise tax for the taxable years 1984 through 1991.[9]

It is significant, we think, that the department's "practice" appears to be just that: a practice. No rules have been adopted by the agency on the subject. But however it is memorialized, its practice directly contravenes the plain language of the statutes exempting interest on a variety of state and municipal obligations from "all taxes."

We acknowledge that certain instruction booklets for corporate franchise tax returns instruct taxpayers to include income from state and municipal obligations on their returns. But the department does not explain how these generally worded instructions can override plainly worded statutory exemptions expressly created by the legislature. As American Family points out, the instructions are for "general" corporations, not insurance companies. Special forms exist for insurance companies subject to the state franchise tax, and those forms, and their instructions, do not contain similar instructions.

Finally, accepting the department's position that it can, by developing a practice that borders on the informal, ignore the plain language of legislative acts and

---

[9] The affidavit specifically referred to three of the four statutes American Family listed, acknowledging that the practice applied to "[i]ncome from sec. 66.431(5)(a)4.c Redevelopment Authority bonds, sec. 66.40(14)(a) Wisconsin Housing Authority bonds, and sec. 66.4325(4) Community Development Authority bonds."

thus save its franchise tax from an adverse ruling in this proceeding would be to exalt the agency—a creature of the legislature possessed of only such powers as the legislature has granted it—over the legislature itself. It is a result we cannot sanction.

Because its terms plainly direct the taxation of federal obligations in the face of statutes which, equally plainly, exempt obligations of various state and municipal obligations from the tax, § 71.43(2), STATS., is discriminatory within the meaning of 31 U.S.C. § 3124(1)(a) and thus violates the ban of the federal statute. We therefore reverse the circuit court's order and remand to the court with directions to enter an order reversing the commission's decision.

*By the Court.*—Order reversed and cause remanded with directions.